IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Kenneth R. Hudson,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 1:07cv1273 (JCC/BRP) |
| | ) | |
| **John M. Jabe, et al.,** | ) | |
| **Defendants.** | ) | |

MEMORANDUM OPINION AND ORDER

Kenneth R. Hudson, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983 against John M. Jabe, Virginia Department of Corrections ("VDOC") Deputy Director, and Dr. Louis Cei, Special Programs Manager. Plaintiff has also filed an application to proceed in forma pauperis. However, that application is not complete, and additional information will be requested from plaintiff's correctional institution. Additionally, for the reasons that follow, this complaint does not conform to all requirements for requirements for § 1983 civil actions, and plaintiff will be directed to provide additional information.

I.

According to the complaint, on or about August 16, 2007, plaintiff and other unidentified inmates incarcerated in the Southampton Correctional Center ("SCC") in Capron, Virginia submitted a request to the SCC chaplain to establish religious services for what plaintiff describes as an "Islamic based community known as 'The Nation of Gods and Earth'[,] which is also referred to as the 'Five Percenters (misnomer).'"[1] According to the complaint, the Nation of Gods and Earth is a

---

[1] Plaintiff appears to have made the request because Virginia Department of Corrections ("VDOC") Operating Procedure 841.3(c)(1) requires VDOC inmates to submit their requests for new religious groups or activities not previously or currently offered on a "Request for Recognition of Religious Group" form to a designated unit head or designee at a correctional facility.

"well-established community of men, women, and children who share a common way of life and culture based on a belief in God." The chaplain denied plaintiff's proposal on August 17, 2007, informing plaintiff that, as the result of a July 2, 2007 memorandum from defendant Jabe, the group was not a recognized religion and that plaintiff could contact defendant Cei with additional questions. On September 3, 2007, utilizing the SCC grievance procedure, plaintiff grieved the chaplain's denial of his proposal and Jabe's July 2 memorandum. The chaplain's denial of plaintiff's proposal was upheld by a VDOC regional director. On or about September 5, 2007, plaintiff and other unidentified SCC inmates submitted Request for Recognition of Religious Group forms to SCC Warden James Beale. Those requests were forwarded through a regional director to the Faith Review Committee for recommendation to the deputy director. Plaintiff states that he has yet to receive a response to this request.

Approximately four days later, apparently after receiving information that the Nation of Gods and Earth had been classified as a "gang" and that he had been classified as a "gang" member because of his membership with the nation, plaintiff filed a grievance requesting that the label of "gang" be removed from his name. Warden Beale's response to plaintiff's complaint indicated that the Nation of Gods and Earth has been identified by the VDOC as a security threat group and that plaintiff was not being denied the right to practice his religion in his cell. Plaintiff asserts that he is prohibited by defendants from possessing any "associated literature," other than the Bible or the Qur'an regarding the teachings and practice of his religion. He also asserts that defendants have placed a "substantial" burden on the free exercise of his religion by classifying him as a "gang" member, by restricting his possession of religious literature associated with the teachings and practice of his religion and by restricting his exercise of his religion to his cell. He claims that Jabe's

ban on religious literature, Jabe and Cei's classification of the Nation of Gods and Earth as a Security Threat Group and Jabe and Cei's classification of plaintiff as a "gang" member have deprived and continue to deprive plaintiff of his rights to free exercise under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and his right to equal protection under the Fourteenth Amendment. He seeks relief in the form of a declaratory judgment stating that the actions of defendants violate his rights under the First and Fourteenth Amendments and the RLUIPA.

## II.

While district courts must liberally construe a pro se litigant's pleading, this does not relieve a pro se plaintiff from alleging a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D.Va. 1999). To state a cause of action under § 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988).

A. Free Exercise

The First Amendment and the RLUIPA prescribe similar, but not identical, tests to determine whether an individuals's right to free exercise of religion has been violated. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. 1. Although incarcerated, a prisoner such as plaintiff still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Generally, a prisoner's sincere desire to practice a religion may be restricted only

upon a showing that the restriction is reasonably related to legitimate penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Ali v. Dixon, 912 F.2d 86 (4th Cir. 1990). Accordingly, to state a claim for a violation of his right to free exercise of religion under the First Amendment, plaintiff must allege facts sufficient to make two threshold showings. See McManus v. Bass, No. 2:05cv117, 2006 WL 753017, at * 4 (E.D.Va. 2006) (citing Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972)). First, plaintiff must allege facts sufficient to show that he sincerely holds his religious beliefs; second, he must show that his claims are rooted in that religious belief and not in "purely secular" concerns. Id. (quoting Yoder, 406 U.S. at 215-16).

If the prisoner alleges that a threshold constitutional right has been infringed under the Free Exercise Clause, courts then analyze that claim under the reasonableness test set forth in Turner v. Safely, 482 U.S. 78, 89 (1987). Under this test, the Court "is required to determine whether a prison policy or regulation burdens the right to free exercise of religion, and, if so, whether a prison policy or regulation is reasonably related to a legitimate penological interest." Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006). The Supreme Court has explained that the burden is "not on the State to prove the validity of the prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 538 U.. 126, 132 (2003). In deciding whether a prison regulation can be sustained as "reasonably related to legitimate penological interests," the court mus consider: 1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; 2) whether there are alternative means of exercising the right in question that remain open to prisoners; 3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and 4) whether ready alternatives exist which accomodate the right and satisfy the penological interest. Turner, 482 U.S. at 89-90.

Congress enacted RLUIPA in order to apply the Religious Freedom Restoration Act's strict scrutiny standard to state barriers to institutionalized persons' exercise of their religion by constitutionally permissible means. See Cutter v. Wilkinson, 125 S. Ct. 2113, 2119-20 (2005). RLUIPA provides in pertinent part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the inmate bears the burden of persuasion regarding demonstrating that his religious exercise has been substantially burdened. Id. at 2000cc-2. The Supreme Court has defined "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718, (1981); See Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). Only when such a showing is made does the government bear the burden of persuasion that its practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. Lovelace, 472 F.3d at 189.

At present, plaintiff has failed to meet his burden to state a claim under the First Amendment or the RLUIPA. As an initial matter, it is unclear from the complaint whether the "Nation of Gods and Earth" is a group or organization that is religious in nature. As noted, plaintiff identifies the group as a "well recognized Islamic based community." A proper free exercise claim, however, involves state action that burdens religious, rather than secular or philosophical beliefs. See Yoder, 406 U.S. at 215-16; Thomas Review Bd., 450 U.S. at 713-14. Moreover, even assuming that the "Nation of Gods and Earth" is a group whose beliefs are religious in nature, there is simply no

5

indication from the complaint that any beliefs plaintiff holds with respect to this religion are sincere. With respect to the prison restrictions about which plaintiff complains, it is simply unclear from the complaint how the VDOC's classification of the "Nation of Gods and Earth" as a Security Threat Group burdens or substantially burdens plaintiff's exercise of his religious beliefs. Because plaintiff is proceeding pro se, he will be given the opportunity to particularize and amend his claims to address these concerns.

B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors. See U.S. Const. amend. XIV, § 1. To bring an equal protection claim, a prisoner must plead sufficient facts to make a threshold showing "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Only after satisfying this threshold requirement will the Court determine whether the disparate treatment at issue was justified. Id. at 731. "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison, 239 F.3d at 654.

At present, plaintiff has failed to state an equal protection claim. Although plaintiff alleges that his right to religious freedom under the Equal Protection Clause of the Fourteenth Amendment has been violated, he alleges no facts in support of this conclusion. Specifically, plaintiff has not made the threshold showing that he was treated differently than a similarly situated class of inmates. Moreover, he does not claim that VDOC has acted with a discriminatory purpose. However, because plaintiff is proceeding pro se, he will be directed to particularize and amend this claim.

6

## III.

Additionally, "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006) (requiring complete exhaustion of correctional facility administrative remedies). Plaintiff appends to his complaint copies of the Level II Inmate Grievance Response Forms he received on the issues of "establishing citizenship classes in accordance with the teaching of the Nation of Gods and Earths"[2] and his objection to having this group classified as a gang or security threat group. Log Nos. 102-06945 & 102-06952. These Level II grievance response forms informed plaintiff that he had exhausted his administrative remedies with respect to that claim. However, it is unclear at present whether plaintiff exhausted his claim with respect to Jabe's ban on religious literature. Before this action may proceed, plaintiff will be required to submit additional information concerning his exhaustion of administrative remedies. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 680 (4th Cir. 2005) (deeming improper sua sponte dismissal of a claim on exhaustion grounds).

Accordingly, it is hereby

ORDERED that the complaint be and is conditionally filed pending compliance with the requirements of this Order; and it is further

ORDERED that the plaintiff is assessed a filing fee of $350.00 pursuant to 28 U.S.C. § 1914(a); and it is further

---

[2] The Court notes that plaintiff does not include the issue of establishing citizenship classes as one of the claims in his complaint. Compl. 7-8.

ORDERED that plaintiff either (1) pay the $350.00 filing fee or (2) complete the attached Consent Form. If the Court grants plaintiff in forma pauperis status, plaintiff will be required to pay the filing fee in installments after first paying an initial filing fee. FAILURE TO PAY THE $350.00 FILING FEE OR TO RETURN THE COMPLETED ATTACHED FORMS WITHIN THIRTY (30) DAYS WILL RESULT IN DISMISSAL OF THIS ACTION WITHOUT PREJUDICE; and it is further

ORDERED that the Clerk request plaintiff's institution to provide an Inmate Account Report Form on plaintiff within thirty (30) days of the date of this Order; and it is further

ORDERED that plaintiff particularize and amend his complaint within thirty (30) days of the date of this Order by addressing the issues raised in this Order by (i) submitting a short, detailed statement and (ii) one original amended complaint. Plaintiff must include his civil action number on the first page of his amended complaint, and this amended complaint will serve as the sole complaint in this civil action; and it is further

ORDERED that, within thirty (30) days of the date of this Order, plaintiff complete and return the attached affidavit concerning his exhaustion of his institution's administrative grievance process; and it is further

ORDERED that plaintiff's failure to comply with any part of this Order within THIRTY (30) DAYS FROM THE DATE OF THIS ORDER, or failure to notify this Court immediately in the event he is transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Fed. R. Civ. P. 41(b).

The Clerk is directed to send a copy of this Order, a Consent Form, and the exhaustion affidavit to plaintiff as well as a copy of this Order and the Inmate Account Report Form to

plaintiff's current institution of confinement.

Entered this 2nd day of June 2008.

/s/
James C. Cacheris
United States District Judge

Alexandria, Virginia